UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV 7955**

------------------------------------------------------------X
JON SAVOY,

                                                                 JURY TRIAL DEMANDED

                       Plaintiff(s),

           -against-                                      **COMPLAINT**

THE CITY OF NEW YORK, a municipal entity; NEW     ECF CASE        JUDGE NATHAN
YORK POLICE DEPARTMENT; POLICE OFFICER
GLENN HUDECEK, Shield No. 18059 of the BXTF;
and POLICE OFFICERS JANE and JOHN DOES 1-40;

                              Defendants.
------------------------------------------------------------X

       Plaintiff JON SAVOY, by his attorney CHRISTOPHER H. FITZGERALD, complaining of the defendants, respectfully alleges the following:

### I.  PRELIMINARY STATEMENT

1.     Plaintiff JON SAVOY brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

### II.  JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

### III.  VENUE

3.     Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1391(a), (b), and (c) and § 1402(b) because Defendant CITY of NEW YORK maintains its primary and relevant places of business in this district.

### IV.  JURY DEMAND

4.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V.  THE PARTIES

5.     That at all times hereinafter mentioned, the plaintiff was a resident of the County of the Kings, City and State of New York.

6. That at all times hereinafter mentioned, the defendant, THE CITY OF NEW YORK, was and is a municipal corporation, duly organized and existing under by virtue of the laws of the State of New York.

7. That at all times hereinafter mentioned, the defendant, NEW YORK CITY POLICE DEPARTMENT, was and is a municipal corporation, duly organized and existing under by virtue of the laws of the State of New York.

8. That at all times hereinafter mentioned, the defendants, POLICE OFFICER GLENN HUDECEK, Shield No. 18059 of the BXTF, and POLICE OFFICERS JANE and JOHN DOES 1-40 were and still are employed with the NEW YORK CITY POLICE DEPARTMENT.

9. That at all times hereinafter mentioned, the defendant officers were acting within the scope and course of their employment with the New York Police Department, and under color of state law.

10. That at all times hereinafter mentioned, all of the actions of the officers and detectives alleged herein was done within the scope and course of his or her employment with the New York Police Department and under the color of state law.

11. That all of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

## VI.   STATEMENT OF FACTS

12. On or about October 1, 2014, plaintiff JON SAVOY was peacefully and lawfully participating in the demonstration and march which was part of the Occupy Wall Street Movement ("the Occupy Movement"), when the police led, escorted and permitted the march onto the Brooklyn Bridge roadway.

13. At no point on that day did plaintiff hear any warnings or orders not to proceed onto the bridge roadway.

14. Plaintiff understood passage upon the roadway to be permitted by police.

15. After leading the demonstration well out onto the Brooklyn Bridge, defendants without cause, notice and opportunity to comply with any order, trapped and arrested plaintiff, boxed plaintiff in without avenue of exit, and falsely detained and arrested plaintiff in the absence of probable cause.

16. Defendants POLICE OFFICER GLENN HUDECEK, JOHN or JANE DOES 1 – 30 are unidentified New York City police officials, officers or command staff who caused or did arrest the plaintiff class. These as-yet-unidentified defendants engaged in the mass arrest notwithstanding the absence of probable cause or lawful justification.

17. These defendants knew that the NYPD had permitted and/or conveyed permission to the marchers to conduct their march and, ultimately, to be upon the bridge roadway.

18. These defendants knew that police had escorted and led marchers onto the roadway and then, minutes later, arrested the plaintiff class for being present upon the roadway onto which police had just led and escorted them.

19. These defendants are sued in their individual and official capacities.

20. Defendants JOHN or JANE DOES 31 – 40 are unidentified law enforcement or security officials, officers or agents who, although not employed by the NYPD, did engage in joint action with the NYPD and its officials, officers and agents to cause the mass false arrest of the plaintiff class.

21. In advance of the October 1, 2011 march that is the subject of this Complaint, the defendants had knowledge of the Occupy movement, the physical encampment and base of operations at Zuccotti Park, and the fact that persons associated with the Occupy movement had engaged in First Amendment protected activities, including political marches, as a form of political expression and action.

22. On October 1, 2011, plaintiff and other demonstrators from the Occupy movement began marching from Zuccotti Park near Wall Street, which the demonstrators dubbed Liberty Square.

23. The march moved initially from Zuccotti Park towards the Brooklyn Bridge.

24. The NYPD presence at Zuccotti Park and along the march was substantial, consisting of the deployment of officers on foot, officers on bicycles, officers on motor-scooters and/or motorcycles, officers in cruisers and officers in other types of vehicles.

25. Police had staged and arrayed their resources, personnel and assets including officers, weapons, amplified sound equipment and other crowd control devices sufficient for the march.

26. The NYPD permitted, and did not impede, the start of the march from Zuccotti Park.

27. The NYPD permitted the march to proceed upon the public ways from Zuccotti Park and through downtown Manhattan.

28. The NYPD permitted the march to proceed to the Brooklyn Bridge and, ultimately, permitted the march to proceed upon the vehicular roadway of the Brooklyn Bridge.

29. The NYPD used officers, including flanking the march with officers on motorscooters or motorcycles, to escort the march from Zuccotti Park to the Brooklyn Bridge.

30. The NYPD officers escorting the march "guided" and exercised control over the conduct of the march through their physical presence, show of police force and authority, and specifically through the issuance of orders and directives to individuals within the march.

31. The march as a whole, and plaintiff in particular, understood that the NYPD was escorting and permitting the march to proceed.

32. As the march proceeded towards the Brooklyn Bridge, the NYPD knew and observed that the march of several thousand individuals was compliant with police directives and, indeed, followed the police directives.

33. At points and times, the police directed and permitted marchers to proceed in ways ordinarily prohibited under traffic regulations absent police directive or permission.

34. At some intersections along the march, police blocked vehicular traffic, directing and permitting marchers to cross the street against the traffic signal.

35. Plaintiff and the other marchers relied on the orders and signals by the police that this, ordinarily prohibited, conduct was at that particular time and place being allowed by the police who were guiding and escorting the march.

36. In general, the marchers relied on the police for directives and indications as to what actions were being permitted at what times, so that they could conform their conduct and comply with the orders and indications being given by police.

37. Later in the march, when police led and escorted and permitted marchers *en masse* onto the roadway of the Brooklyn Bridge, marchers understood that they were being led and escorted and permitted onto the roadway of the Brooklyn Bridge.

38. The police deprived the plaintiff class of any fair notice that following the lead and escort of police across the bridge roadway was somehow prohibited.

39. As the front of the march reached City Hall Park, those in the front of the march crossed Centre Street and moved to the pedestrian walkway or promenade of the Brooklyn Bridge.

40. When the front section of the march encountered the narrow pedestrian walkway of the bridge, there was a natural congestion as the large group began to file onto the smaller walkway. It took some period of time for the first portion of the march to enter upon the walkway, which occurred without disturbance.

41. Police, including command officials and other city officials, stood in an eastbound roadway at the entrance of the bridge.

42. The command officials gave no *audible* warnings or orders to the mass of people assembled.

43. Defendants knew that the Constitution requires that any ostensible command must be heard by those who are expected to be bound by it.

44. There was no attempt by the NYPD to communicate a command, order or other message to the whole of the mass of people at the base of the bridge.

45. No commands, instructions, or directives were ever heard by plaintiff.

46. Having initially stood in the eastbound roadway of the Brooklyn Bridge, the command staff and police at the roadway entrance then turned around, and led the midsection of the march across the bridge

47. From that moment on, no orders were issued from the police at the roadway entrance for the ongoing flow of marchers to not proceed on the roadway.

48. Police continued to escort the march along its side, with no police on the flanks ordering or directing the march they had been escorting that afternoon against entering or being present upon the bridge.

49. Police permitted the march to proceed upon the roadway of the bridge.

50. Though initially on the footpath, plaintiff and other marchers followed the police escort onto the roadway of the bridge.

51. As plaintiff and other marchers approached the first tower of the Brooklyn Bridge, the defendants stopped the march, informed the marchers that they were "trespassing."

52. Defendants then encouraged plaintiff and his fellow marchers to leave the bridge roadway, while not allowing them an opportunity to do so.

53. Defendants then deployed orange nets and encircled plaintiff and other marchers.

54. Within several minutes, buses from the Department of Corrections arrived on the scene.

55. The plaintiff and other marchers were ultimately prevented from moving backward as the NYPD prevented dispersal through the use of orange netting and police vehicles.

56. Upon information and belief, plaintiff was placed in zip tie cuffs by defendant POLICE OFFICER GLENN HUDECEK, and placed onto the Department of Corrections Busses.

57. The speed with which the nets, and buses materialized indicated that defendants had planned the entire operation as a trap to arrest the marchers.

58. Plaintiff was brought to Manhattan Central Booking and detained for approximately 20 hours.

59. Plaintiff was given a Desk Appearance Ticket, dated October 1, 2011, under which he was charged with a violation of New York Penal Law §240.20(5), signed by defendant POLICE OFFICER GLENN HUDECEK, Shield No. 18059 of the BXTF.

60. The prosecution against plaintiff continued under Criminal Court Docket No. 2011NY080106, for which he was required to appear in court on eleven (11) subsequent occasions from the time of his arrest until August 6, 2013.

61. On August 6, 2013, the charges against Plaintiff were finally dismissed.

62. At no time did the plaintiff fail to obey a police order.

63. At no time did the plaintiff engage in disorderly conduct.

64. At no time did the plaintiff or other marchers illegally block vehicular traffic on the Brooklyn Bridge, as the police had stopped vehicular traffic, opened up the roadway to pedestrian traffic, and themselves led and escorted the demonstration onto the roadway with police command officials at the lead.

65. At no time did the plaintiff or other marchers engage in parading without a permit, as the march of several thousand was permitted to proceed and escorted by police throughout and there was never any notice to the class that such permission had been revoked.

66. The continued existence of the trap-and-arrest policy, practice and custom imposes an objective and substantial chilling effect on the exercise of free speech and assembly rights.

67. The continuation of the policies, practices and customs challenged herein places persons within the plaintiff class at risk for future false arrest should they continue to associate with protest and march activity in New York City. The risk presented by these practices is that a person - - no matter how law abiding his or her conduct - - is at risk for sudden and indiscriminate false arrest simply by virtue of being physically present near protest activity.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §1983

68. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

69. All of the aforementioned acts of the Defendant CITY OF NEW YORK, and the individual defendants and their agents, servants, and employees, were carried out under the color of state law.

70. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eight, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

71. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

72. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to their customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under supervision of ranking officers of said department.

73. The individual defendants, and defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally violative conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

74. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to his reputation and his standing within his community.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. §1983

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

76. Plaintiff was arrested in the absence of probable cause, at the direction of, or under practices, policies or customs promulgated by the NEW YORK POLICE DEPARTMENT and CITY OF NEW YORK.

77. As a result of the aforesaid conduct by defendants, plaintiff was subjected to illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

78. As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to his reputation and his standing within his community.

79. As a result of defendants' impermissible conduct, plaintiff demands judgment against defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983

80. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

81. At the aforementioned times and locations, plaintiff was detained and held under the imprisonment and control of the defendants under false pretenses.

82. Defendants commenced the criminal action against plaintiff in the absence of any probable cause that a crime had been committed.

83. Defendants commenced this criminal action out of malice.

84. The criminal action against plaintiff has terminated in his favor.

85. That the acts and conduct on the part of the individual defendants constituting the false arrest and false imprisonment consisted in part of the following: unlawfully and intentionally detaining and confining plaintiff against his will and without his consent; unlawfully and intentionally detaining and confining plaintiff without privilege, probable cause or valid legal process; unlawfully detaining and confining plaintiff through the unlawful arrest of plaintiff; unlawfully detaining and confining plaintiff; unlawfully arresting plaintiff and placing him in handcuffs without reasonable cause therefore, and committing such other acts resulting in the unlawful arrest and imprisonment of plaintiff.

86. That at all times hereinafter mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

87. That plaintiff was conscious of the confinement.

88. That as a direct, sole and proximate result of the false arrest, imprisonment, and excessive force, plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

89. By the actions described above, the individual and municipal defendants caused plaintiff to be falsely arrested and/or falsely imprisoned plaintiff without probable cause, without reasonable suspicion, illegally, without any proper claims, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the law of the Constitution of the United States.

90. As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to his reputation and his standing within his community.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF AND RETALIATION FOR
### THE EXERCISE OF RIGHTS AND FREE SPEECH AND ASSEMBLY UNDER
### 42 U.S.C. §1983

91. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

92. By the actions described above, the defendants violated, and retaliated for the exercise of the free speech and assembly rights of the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the United States Constitution, and the laws and Constitution of the State of New York.

93. At or around the times that Plaintiff came into contact with Defendants POLICE OFFICER GLENN HUDECEK, JOHN or JANE DOES 1 – 30, Plaintiffs were or had recently been engaging in protected speech and conduct, including but not limited to peaceably assembling in public streets for the purpose of engaging in First Amendment protected expression related to critical social issues; and walking and being present in proximity with persons peaceably assembling in public streets for the purpose of engaging in First

Amendment protected expression related to critical social issues.

94. Defendants POLICE OFFICER GLENN HUDECEK, JOHN or JANE DOES 1 – 30, took adverse action against Plaintiffs for engaging in such protected speech and conduct.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER MONELL ARISING FROM UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983

95. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

96. Defendants arrested and incarcerated plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

97. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

98. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NEW YORK POLICE DEPARTMENT, all under the supervision of ranking officers of said department.

99. The aforementioned customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

   a) wrongfully arresting individuals engaged in first amendment protected expression without probable cause due to perceived lack of respect for the police officer (i.e., "contempt of cop" arrests of persons engaged in first amendment protected expression);

   b) wrongfully arresting individuals engaged in first amendment protected expression without probable cause in attempts to justify excessive uses of force against same (i.e. "contempt of cop" "cover charge" arrests; condoning brutality);

   c) wrongfully arresting innocent persons engaged in first amendment protected expression in order to meet quantitative "productivity goals" (i.e., arrest

quotas).

d) wrongfully arresting persons without probable cause due to perceived lack of respect for the police officer; in order to teach a lesson in respect while also satisfying quantitative "productivity goals" (i.e., "contempt of cop" arrests used to satisfy arrest quotas).

e) the pervasive failure to supervise, train, instruct and discipline police officers with respect to the constitutional rights of citizens, and encouraging the ensuing misconduct through condoning officers' widespread custom or practice known as the "Blue Wall of Silence," wherein officers deliberately frustrate official and departmental oversight by discouraging officers from reporting corrupt or unlawful acts of other police officers, and by retaliating against officers who report police misconduct (condoning pervasive constitutional violations and concomitant "Blue Wall of Silence" cover-ups of same)

f) wrongfully arresting persons observing, documenting, or commenting upon police actions in violation of the consent decree in *Black et al. v. Codd et al.*, United States District Court, Southern District of New York, 73 Civ. 5283 ("Consent Decree").

100. The Consent Decree states at 2 that: "[n]one of the following constitutes probable cause for the arrest or detention of an onlooker [to a police action] unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated: (a) Speech alone, even though crude and vulgar; (b) Requesting and making notes of shield numbers and names of officers; (c) Taking photographs; (d) Remaining in the vicinity of the stop or arrest."

101. This understanding memorialized in the Consent Decree is codified in the NYPD Patrol Guide at PG §208-03, subsection "Observers At The Scene of Police Incidents."

102. Despite due and repeated notice of the First Amendment rights of citizens in the vicinity of police actions, those same rights have been disregarded flagrantly and repeatedly throughout the course of Occupy Wall Street by members and ranking officers of the NYPD alike.

103. Officers of the NYPD took adverse action against the aforesaid Plaintiffs and other persons similarly situated in deliberate efforts to chill the First Amendment protected expression of persons observing, recording, and/or commenting upon police actions undertaken in the course of Occupy Wall Street.

104. The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer

11

and officials of the NYPD and Defendant CITY OF NEW YORK.

105. The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned *de facto* policies and/or well-settled and widespread customs and practices of Defendant CITY OF NEW YORK, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.

106. They do so with the knowledge and approval of their supervisors, commanders who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and IAB, and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

107. As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual defendants, Plaintiffs' constitutional rights were violated.

108. As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages and damage to their reputations and standings within their communities.

109. As a result of the aforementioned conduct of the defendant CITY OF NEW YORK, and the individual defendants, plaintiff's constitutional rights were violated.

110. As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to his reputation and his standing within his community.

111. As a result of the defendants' impermissible conduct, plaintiff demands judgment against defendants in a sum of money to be determined at trial.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages;
b. Punitive damages;
c. The convening and empaneling of a jury to consider the merits of the claims herein;
d. Costs and interest and attorney's fees;
e. Such other and further relief as this court may deem appropriate and equitable.

DATED:

New York, New York
October 1, 2014

Respectfully submitted,

**The Law Office of
Christopher H. Fitzgerald**
*Counsel for Plaintiff*

By: Christopher H. Fitzgerald, Esq.
(CF-1415)
233 Broadway, Suite 2348
New York, NY 10279
(646)580-3489